Good afternoon, Your Honors. May it please the Court, my name is Kate Stetson. I represent Logtale, Ltd., which is the appellant in one of these appeals and the cross-appellant in some of the others. I'd like to reserve five minutes for rebuttal, if I could. And before I dive in, this is a very messy tangle of appeals. Right. So it would be very helpful, and maybe this is what you're about to do, if you tell us what you're going to be arguing. Yes. And my understanding, too, is that thankfully we're not going to be sort of popping up and down on cross-response and sort of but also here's, with the Court's permission, what I would suggest, that I break this into two parts, the three issues that are subject to the Rule 50 procedural foreclosure issue, and then the three issues that are not in that order. So with respect to Rule 50, the defendants at the end of the trial, after the verdict was submitted, filed a Rule 50 motion, and they argued three issues that are relevant to this appeal. They said that the instructions on the contract damages were in error. They said that the jury had not had sufficient evidence in front of it to return damages on the contract claim. And then the third issue was that the damages across the breach of contract, breach of fiduciary duty, breach of implied contract of good faith and fair dealing were duplicative. The plaintiffs or the defendants have appealed those first two issues. We have appealed the third. The problem with each of those, though, is that this Court's three most recent decisions on the Rule 50b issue all have established that where a party does not file a Rule 50a, that party is foreclosed from pursuing a Rule 50b. So I'm referring to the Tortu case that we cite in our briefs, also referring to the Smith v. Las Vegas Police Department case that's in our reply. And then there's a case called McConnell v. Walmart issued in 2016 that follows suit. And in each of those cases, the Court makes — Well, I understand that on the contract damages and punitives. I don't really understand on the splitting up of the compensatories how — I mean, and this is, I suppose, in your favor — how you could have filed a 50a motion before it happened. Well, I think, first of all, the Court in Yeti v. Mali addressed exactly this issue. The party there challenged multiple damages awards as being duplicative. And the Court in Yeti v. Mali said you didn't challenge these in a 50a, and there is no warrant to pursue them because you didn't challenge them in a 50a. So I think there's precedent for the idea that that had to be pursued. But you couldn't know whether they were duplicative until you saw what the jury decided. If the jury had come back with all of the damages on the contract in 00, then it wouldn't have been duplicative. No, but I think there's a little bit more to it than that. For example, the way that the jury was instructed included — and you can see this at our record excerpts that we filed with our long brief, record excerpts 343 — there was an express instruction to the jury that said, do not award duplicative damages. The jury verdict form, which is the form that the defendants stipulated to, didn't say, for example, under your hypothesis, if you write in a damages award under breach of contract, don't go to breach of fiduciary duty, breach of implied covenant of good faith and fair dealing. So where you have both an express instruction that says, don't award duplicative damages, you have a jury verdict form that specifies each of those claims and the specific harms that arise under those claims. That's why I think it was perfectly susceptible, just as the court in Yeti by Molly said, to a Rule 50a motion. Why didn't you file a Rule 50a motion on the punitive damages issue? We would not have been in a position, I think, to file a Rule 50a motion on the punitive damages issue, actually, for the reason that Judge Berzon just said. The Rule 50a would have needed to come in before the evidence went to the jury. Right. So why didn't you say there hasn't been any evidence presented of, what is it, their financial condition, and so this can't go to the jury? That's actually a question for my adversary. Oh, I'm sorry. Maybe it's you. No, it's understandable. Oh, I apologize. Yeah, we are appealing the punitive damages. It would have been Icahn and the two individual defendants that would have been in a position to seek a Rule 50 motion on punitives. Let me ask you what happened after the jury came back. This is pretty extraordinary. Somebody then, or the judge says, well, I'm really confused as to how much the jury wants to award, and so they, he basically, I'm not sure it was a he or a she, basically says, tell me what this is. Is this cumulative or is this aggregated? Yes, exactly, and I think that's actually an important data point, Judge Sessions, for why these damages awards can't be found to be duplicative. And by the way, this all presumes that we get past that procedural foreclosure issue and we're into the plain error, manifest miscarriage of justice standard that some of the court's earlier precedents have set out. But yes, at joint appendix or excerpts of record 373 and 374 in our excerpts, there's this colloquy after the jury comes back and the judge says, I'm confused. These damages awards are the same, and the foreperson says, and I quote, the award is meant to be cumulative, so 4 million total amongst all of those awards. And then the jury was polled and no juror disagreed. So the significance of that, I think, is if you look at the cases that we cite and actually that ICOR cites discussing duplicative damages, one of the key issues is whether the jury has made clear that in fact it didn't award duplicative damages. So where you have not just the instruction, which the jury is presumed to follow, that says thou shalt not award duplicative damages, but you have the jury actually saying this award is cumulative. And if you look at the other ones, what they were saying is we did it this way to avoid being duplicative. In other words, we split it all, we split up. Instead of putting it all in one, we just split it up, but it's, but it's, we split it up. So the damages awarded on each one is less than they would otherwise have awarded. That's exactly right. I mean, they could have awarded, I think the top of the range of the damages that were requested by Logtale was upwards of $9 million. So the $4 million award, and this is the point that the Eleventh Circuit made. Now, my understanding is that your argument on the 50A is that we have recent case law that says the 50A just squashes the whole thing. Correct. It doesn't lead to plain error. That's correct. I had never been there. Yes. So Tortu is the lead published case on that from 2009. And then the cases that I mentioned, Smith and McConnell from 2017 and 2016 respectively, both unpublished, but both of them follow Tortu. So you would say that the instruction, we just can't even reach the instruction? With respect, is Your Honor referring to the contract damages instruction? Well, to the extent that you both agreed to the instructions initially, the question is whether there's a waiver to objection to those instructions. Yes. And I think Judge Sessions, that it's, with respect to the instruction, it's almost a double waiver issue, because you have not just the Rule 50 problem that we've been talking about, but you have the additional fact that these defendants stipulated to the very instruction that was given. So whether you look at this through the Rule 50A procedural bar lens, or whether you look at it just as invited error or waiver under the instruction stipulation, you get to the same place with respect to the instruction on contract damages. If we thought we had to say anything about this instruction, what does that last piece mean with regard to contract damages? I think it speaks of restitution. I think one of the problems that we have with the way that Dr. Canton and Icore have approached this question of the damages instruction is that when you pursue rescission, you don't bring a breach of contract claim at all. And here, of course, we had a breach of contract claim. There are different measures of damages for breach. And importantly, I think the instruction that Dr. Canton challenges actually speaks to a couple different modes of damages. The phrase that you're referring to, I think, Judge Berzon, has to do with restitution, not rescission. And it's just as easily read that way, and I think it should be read that way, both in light of the fact that the defendant stipulated to this and in light of the fact that we were there bringing a breach claim. So I'm interested in your argument about punitive damages, in particular, the $1 million that was awarded to you. Obviously, you've appealed that. What's your argument? So our argument on punitives is that when the trial judge struck the punitive damages award, she was quite categorical in her decision. She said, you haven't established evidence of net worth, therefore, no punitive damages. Our argument is that it's a little more complicated than that, because the California law doesn't prescribe a rigid formula for punitive damages. Now, I would be disingenuous if I didn't tell you that the great bulk of California law, and you've seen it as well as I have, suggests that in the usual case, it says, a party needs to show both the assets and the liabilities on the side of the column. But you do have the Cummings case. In the Cummings case, which isn't applicable just to fraud, because it cites a number of other cases for this proposition, the Cummings case said you can contemplate a circumstance where what that case called gain-based punitive damages are appropriate. And that is what we were pursuing here. So the measure of punitive damages, I won't tell you that you can find a list of Dr. Canton's liabilities in the record, because you can't. But what you did assert is just what you did prove is that you went through all of their previous positions, all of their positions of trust, in which a logical person would conclude that they had a lot of money as a result of those jobs. That's what you offered, right? We offered a few things. And you can see these sites, and I know this is complex, but it's page 21 of the first brief that we filed. There are sites to the excerpts of record that accompanied that brief, which are different. And there's about a five or four or five line long list of pin sites to the ER. Many of them have to do with what Your Honor is talking about. The Dr. Canton's graduate level degrees, his prior positions, his consultancies, his work, as he put it, with many of the Fortune 1000 companies and so forth. But then there are, you'll see this in the listings as well, a number of examples of the hundreds and hundreds of thousands of dollars that I-Corps paid Dr. Canton or Dr. Canton's companies for Dr. Canton's purported consultancy services. And that, I think, is the sort of mathematical basis, in addition to the fact that he clearly had earning potential. He clearly had earned. And the problem is that it's perfectly, this was all some time ago. People spend the money they get. I gather what we're supposed to be measuring is his condition at the time of the trial, not the condition earlier. Is that right? I think that's true. I don't think that you could point to something in the record and say, well, he was a millionaire in 1978, so clearly he has funds. But I think the time that we're talking about is much more compressed than that. And the fact that he clearly had earning potential and was continuing to earn and had shares in profitable corporations and so forth, that is current and immediate payments, in addition to the payments that he received from I-Corps over the years for the various consultancy services and rents and so forth that he was controlling. I'm sorry about asking you the question before, but the flip of it, I do want to ask you, which is, it seems to me that this really should have been a Rule 50B motion by the time they made it and that there should have been a prior 50A motion if they thought you didn't put in all the evidence that you needed under California law, they should have told you when there was still time to fix it. But I don't actually see you making that argument. So I'm kind of confused about the procedural posture of this whole punitive damages issue. Yeah, and as you were asking the question, I was puzzling over it because we didn't make that argument and the judge didn't rely on that below. They called it a 52 motion, but I don't really understand that. Yeah, I don't think it's a proper 52 motion. I think if you were to call it a Rule 50 motion for the reason that your first question was suggesting, which is if you get to the end of your evidence, everybody's evidence, and the party confronting a punitive damages claim says you haven't proven your claim, I think there is some force to the idea that they should have filed a 50, Rule 50. What I don't know, frankly, is whether having not raised that in our brief, we essentially waived the waiver. But I'd be happy to file a 20HA or some similar submission on that if it would be helpful. If there are no further questions, I'm going to talk about the fees issue. Sorry? The fees issue. Yes, the fees issue. And I want to be sure to maybe I'll start with the question. One of my biggest problems with it is how do you get fees from Canton? I understand the issues about the, it seems to me actually that given the fact that all the contracts were attached, were mentioned in the main, the contract that has the fee provision and was attached to it, that, and that the language that's used is with respect to, I was fairly comfortable. But I don't understand how you get to Canton. So I think how you get to Canton, first, we agree with that line of logic. And I actually think there's another data point that ties a bow on it, which is one of the stipulations that the judge read into the record as part of her instructions. So if you look at record excerpts, again, ours accompanying the long brief, 325, stipulated fact number 15, the stock was issued, and this is a quote, pursuant to the purchase agreement, close quote, and quote, in exchange for all the promises made in the contracts, close quote, between the parties. So that, Judge Berzon, just as you're saying, essentially aggregates all the contracts and all the promises. And I think the result of that is if you are going to aggregate all the contracts and all the promises, and the jury clearly found Canton liable for breach of contract, I think it is just the next logical step that he can be. Do you know that they found Canton in particular liable for breach of contract? Because they assigned damages to Canton in the jury verdict form. Specifically Canton, as opposed to the group of them? Yes. Yeah, the jury verdict form, let me see if I can find it. Starting at our record excerpts 348, the verdict form actually asks the question as to these three defendants, Canton, Tai, who's in bankruptcy, so he's set to the side, and Icor, what damages do you find attributable to each of them? And each of them has a damages number attached to it. So that, I think, is how we get to Canton. Because if we all agree that those contracts are aggregated, and by the way, defendants agree that those contracts are aggregated, that was what I just read to you, then if Canton was found liable for breach, it follows that he's liable for fees. Okay, so just for a moment, let's assume we disagree with you, just so we can understand what happens here. So say we assume Canton isn't liable somehow. What do we do about this? Is it joint and several, or what is going on with these damages? Understandable question. It's joint and several. A couple points on that. The first is the fee award itself doesn't say anything, and the presumption under California law is when you have a contract award or a fee award or a costs award, and it doesn't say anything, and there's nothing in the relevant contracts governing the parties' obligations that suggests it's other than joint and several, then it becomes joint and several. Now, with respect to Tai, because he's the bankrupt one, he drops out, and it becomes joint and several as to I-Corps. So do you actually care whether it's all awarded against I-Corps or somehow split between I-Corps and Canton? We do, yes. Because I-Corps, this isn't part of the record, but if you've been following the blow-by-blow in the district court, you'll see that I-Corps has been subject to a number of series of sanctions orders because it is failing to come forward with proof of its current profits, essentially. So with respect to Canton and I-Corps, it does matter to us that both of them are subject to the fees award. And are the costs that were not the bill of costs but the additional costs, are those really part of fees? They are. I think the lawyerly answer is yes and no. If you look at Canton's record excerpts, volumes 9 and 10, which are the sealed volumes that contain all of Logtail's billing records, what you'll see at the end of each invoice is a list of costs. So the costs have to do with things like travel for a deposition, meals. And Westlaw fees. Westlaw fees and so forth. And they're all listed in those invoices. So this isn't a question, and I worry that Dr. Canton's brief might suggest to the contrary, but this isn't an issue where we just said, oh, by the way, we incurred $1.4 million in costs. The costs are actually very specifically laid out. What the district court- But those costs are not something that we would award under federal law. They're awardable under state law and under the same case law that gives you fees or under something else. I'm not sure what the basis for this cost award was. The basis for the cost award also, I think, comes up under California law because when the contract- But isn't it generally true that even in federal court, when you have a fee award under a fee-shifting statute, for example, that's always peculiarly, my understanding has always been understood to mean essentially what would be in a bill to a client, including costs. That's right. Except for expert fees. I don't know why. I know. It's a strange set of facts. But you're right. And that's why I made the point that these are all in the bill to the client. Because they are, I think, in that respect, and maybe, Judge Friedland, this was your question that I could have answered more succinctly, they are in that respect considered to be a part of fees because they were billable to the client. That's what I meant. Yeah. Where the district court, I think, knocked Logtail back a little bit was that she was not certain whether some of those costs were necessarily justified. So she said, for example, did you have to travel to Hong Kong for that particular meeting or could you have had it in San Francisco? And so with respect to that, she said, I'm going to knock 10% off the costs. That is perfectly permissible. What the Supreme Court has said, and this is in the cases that defendants cite in their brief, this is not a mathematical process. The judge does not need to be a green eye shade accountant. So the judge's 10% shave was perfectly reasonable. And you're not challenging that at this point? No. No, we're not. If there are no further questions, I know we haven't addressed the evidentiary issue. I can speak to that if there are any questions on it. This pertains to the motions in limine that were denied. Okay. All right. Um, it's fine. Thank you. Okay. Thank you, Your Honor. Good afternoon, Your Honor. So I'm Gregory Ward representing Dr. James Canton. Um, and I would ask the court if I could, uh, because Dr. Canton is a cross appellant here. If I could reserve two minutes for rebuttal. Um, sure. All right. All right. Thank you. Uh, I'd like to address first the, the issue of the attorney's fees, uh, that the court was discussing. Um, and it's clear in this case. You want to start at the top? Pardon me? You don't want to start at the top? You want to start at the bottom? Start at the bottom. Okay. Uh, the attorney's fees, uh, were awarded based on a contract clause in the stock purchase agreement. It was entered into between Logtail and I-Corps. All right. But it, but it, it, it, it mentions all the others. It, it attaches them. Um, and the, um, fee provision in the stock agreement, uh, is not limited to, um, fees to, to, um, matters under the agreement. It also has matters in respect to the agreement. Right? Uh, I, I would disagree with that in this sense. First of all, Your Honor, there's, there was no integration of these documents. I didn't say anything. These, these documents, these documents were exhibits attached, and under the stock purchase agreement, the parties had an obligation at the, before closing to enter into these additional contracts. Those contracts did not have an attorney's fees clause. The provision, the attorney's fees provision in the stock purchase agreement says that, um, that you're entitled to, uh, the fees in any suit, excuse me, incurred in enforcing a right, under, or with respect to, this agreement. Right. This agreement is a defined term in that, in the stock purchase agreement. It refers to only the stock purchase agreement. When they refer to other contracts, the ones attached as exhibits. What does with respect to mean? Well, enforcing a right with respect to this, to the, to this agreement. The right in under this agreement, with respect to those additional contracts, is their right to have these other contracts entered into. That's the only right and obligation. And, and not have them abided by? Pardon me? And not have them abided by, just entered into? I'm, I'm sorry, Your Honor, they. And not have them abided by. Okay. In other words, you're saying, you're acknowledging that, that entering into them is with respect to this agreement. Yes. Having them be enforceable is not? It's not. Just empty pieces of paper? No. They're contracts which are enforceable in their own right. And they were entitled to convince this jury that there was a breach of one of those other contracts. There were five contracts here. We don't know what contract the jury found was breached. They were not asked in the special verdict to make a finding as to what contract was breached. The, the verdict forms said in the first question, was there a contract or contracts? And the jury said yes. So at this point, we don't know whether they found one contract or multiple contracts, and we don't know what contract they found to be breached. Question four, dealing with the issue of whether there was a breach, said, did the defendants either fail to do something the contract required or fail to do something the contract prohibited? We don't know what contract they're talking about there. We don't, we don't know it is the stock purchase agreement. And as the cases make clear, the court cannot imply findings from a special verdict. It's the plaintiff's obligation to get all of the findings that it needs in a special verdict, so that the court can enter the appropriate judgment and make appropriate rulings. They did not ask for and did not obtain a specific finding from the jury as to what contract was breached. And without that, we can't say that the jury found that the stock purchase agreement was breached. And, and so therefore. Let's back up for a minute. Sure. The, the stock agreement says, this agreement, the exhibits and schedules here too and other documents, which includes the exhibits include the other contracts, constitute the full and entire understanding and agreement between the parties with regard to the subjects here of it. It's the same language again, with regard to, or no, it's close with respect to. And so why isn't it true, therefore, that the full and entire agreement with respect to the subjects here of is all of the agreements together? Well, there's a difference between saying this is our full agreement and saying that the attorney's fees clause, which is contained only in one of the contracts, applies to all of the other contracts. If there was a breach of the other contract, which do not have an attorney's fees clause. Okay. They can be, they can get damages caused by that breach, but they can't get attorney's fees, only attorney's fees. If the stock purchase agreement is breached and the stock purchase agreement, we don't know the stock breakers agreement was breached in the first place, but it's, it's the fact that they even refer to all of the documents as, as, as your honor just mentioned, they give that, they give that a term too, which is entire agreement. Tell me again what you think it means to say. Any right of such a prevailing party under or with respect to this agreement. What is with respect to this agreement mean other than, because it doesn't mean under this agreement. So what does it mean? It has to deal with the other portion of the sentence, which deals with enforcing any right. They have to be enforcing a right under this agreement, not the entire agreement. Enforcing any right under or with respect to this agreement. So the agreement right doesn't have to be under this agreement. It can be with respect to this agreement. Well, but it's not with respect to that agreement if it's with respect to another contract. That's what I would argue. If they wanted to put attorneys fees clauses in those other contracts, they could have, but they did not. But they, well, anyway. Okay. I understand your argument. Okay. And it's on the issue of, of, of implicated, the court cannot, whatever's in the special verdict, that's what the court is limited by. The court can't imply any findings. The court can't make its own findings because these were issues submitted to the jury and only the jury can make those decisions. Um, but the court certainly has the, has the ability to accept the representation that was made by the jury at the close. Well, after the, after the verdict was given in which they said these, um, uh, dollar amounts are cumulative, right? Um, the court did accept that the court did not pull the entire jury took the word of the four person. That's fine. Um, we haven't challenged. Okay. So there was a polling of the jury afterwards and no one raised any, uh, objection. Well, they, the jury was pulled as to whether or not they agreed with the verdict form, which does not say anything about whether the damages should be aggregated or not, but, but further, but more importantly, the court found that the evidence in the record showed that the same damages and the same conduct was responsible. That, that may be true, but if the jury decided to take the same damages, i.e. $4 million and divide it up because he knew it couldn't be cumulative. Um, so they just described pieces of it to, to different, to various of the defendants and causes of action. Is there anything wrong with that? Yes. It would be in contravention of the court's instructions to the jury as to what the measure of damages is. They were told that in order to award damages, of course, it was, it went a little too far, but they have to award and can only award damages caused by a particular breach. But what if they think there are multiple causes? So, I mean, if they were told you can only like start with contract and award everything for which contract was any cause, maybe they would have awarded 4 million all on contract, but instead they were given this instruction that made them think they should kind of divide it up and not. So they divided it up. I, I don't understand what's wrong with the way they did that. They weren't given an instruction telling them it was okay to divide things up. I think that would be improper. If they wanted to award $4 million for breach of contract, they should have awarded $4 million for breach of contract, not $666,666. But they were told that it had to be, if they had instead given you a verdict form that said $4 million breach of contract, $4 million good faith and fair dealing, and $4 million for judiciary duty, would that have been more clear or less clear? Well, I think it would have been appropriate for the court to make a proper inquiry into the jury as to what they wanted to do. But. And they would have said, then, no, this is not, these are duplicative and we only mean one $4 million. Yeah. And this is basically what they said. We only mean one $4 million. But that's, but they, if in order for them to do that, they have to completely disregard the court's instructions on what to award as damages. I don't really understand why you think it violates the instructions. Because the court told the jury that you must award for breach of contract damages caused by the breach. You must award for breach of fiduciary duty, damages caused by breach of fiduciary duty. So. Well, but the damages were caused by the breach of contract. It just wasn't all of them. Well, I disagree. In other words, read the way we're suggesting. The $667,000 was caused by breach of contract. It just wasn't everything that was caused by breach of contract. Well, what's wrong with that? Well, I'm not sure if we're talking about the court then awarding $666,000 against Dr. Canton for breach of contract. We're not contesting that. That's not part of this appeal. We're contesting their award of $666,000 for breach of fiduciary duty because the law is clear that you cannot award duplicative damages with the same conduct and the same item of damage. What I'm asking is if somebody, he says you should, you can only award damages that were caused by the particular cause of action, right? That's what you're saying. By the particular breach. So I'm sorry? By the particular breach. By the particular breach. Okay. So suppose they thought that the, what was caused by the, the breach of contract was $4 million. But, oh, the judge told us don't, but we also think $4 million, the same, that the breach of good faith and fair dealing and fiduciary duty, also each caused the same $4 million. Altogether, they cost the $4 million. Right? Now, oh, but the judge told us we can only, we can't have duplicative damages. If we write $4 million each for, down for each, then we're awarding to duplicative damages. So we're going to write down for each less than everything that was in fact caused by that breach, breach. What's wrong with not awarding everything that is due for that breach? And it's a problem if you go over, but if you go under, why is that a problem with the instructions? The jury could have done that. Right. And you would have to imply that from the special verdict. Well, why don't we? Isn't that the best reading of what happened here? You can't imply anything from a special verdict. We don't have to imply it. They were asked. If they hadn't been asked, it would be different. But they were asked. We don't have to imply anything. They were asked, how much do you award for this particular cause of action? No. They were asked afterwards whether it was cumulative or not, and they said no. Well, I would submit to the Court that that is not adequate to get around the special verdict signed by this jury. The special verdict was the decision of this jury. And they, we can't, the Court cannot imply any findings from that. That's clear under California law. And you would have to imply that that's what the jury wanted to do. Judge, Magistrate LaPorte determined that there is no separate damages for any of these claims. She determined as a matter of law, her review of the record was that the plaintiff had failed to prove any separate damages for breach of fiduciary duty. Which is why they divided it up so peculiarly. And they said so. I mean, are you saying that we can't take any, the fact that they were asked and answered is irrelevant? I believe it is. I believe that the Court should have instructed the jury to go back into the jury room with further instructions. And give you $4 million, $4 million, $4 million. Which you would have then objected to as being cumulative. Maybe they would have done that. As being duplicative. I think we're in the realm of speculation here. And implication, you can't imply that from this jury verdict. There was no evidence to support separate damages for breach of fiduciary duty. Which is why the Court properly struck those damages. Okay. Your opponent didn't say anything about the motions in limine. Do you want to? Yes, yes, definitely. My quick reaction to it all, which is, of course they were biased. They were, they were suing for a lot of money. Anybody would know they were biased. Sure. And what, what the difference does it make if they were biased, more biased? Because the fact that they were suing for money was not the only fact that indicated their bias. What I'm saying is it's a little odd to try to prove the bias of a party to a lawsuit, as opposed to a witness who purports to be dispassionate. But these people were not just witnesses who, to the situation. They were the party. So. That's right. So the jury is sure, is certainly going to know that they're biased. So why do you have to be more biased?  because the jury didn't know that these people had stolen I-Corps' technology. They didn't know that they were suing I-Corps because they want, they had gone up. I mean, you're trying to get that. I mean, the ultimate problem is that you're, it really isn't relevant to, it may be relevant to their bias, but there's no point in proving more bias. You're truly trying to get it in for other reasons. Well, I think, I think that a party is entitled to put in relevant evidence unless it's more prejudicial than probative or under the other various factors under Rule 403. We're entitled to get this evidence in. The Court didn't engage in any balancing here. The Court didn't try to put any limitations on it. She wouldn't let the jury know that these people were competitors of I-Corps. She didn't let the jury know that this was a multibillion-dollar business where they've stolen I-Corps' technology, set up their own manufacturing facilities in Hong Kong, were going about trying to patent I-Corps' drug for themselves. Now, I submit, Your Honor, that that's an evidence of significantly more bias than simply, I'd like to win this lawsuit. And I think that it was prejudicial to, to the defendants not to be able to bring this in. I don't think that there would be any difficulty reining that in by the Court. The Court could, it's, it's not like there needs to be a mini-trial or anything like that. So even if Canton and Tai's testimony had been totally discredited because you won these motions in Limine and you got this evidence in, isn't there still, even if we take their testimony out, still totally enough evidence to support this verdict? No, not at all. And I think that, Your Honor, misspoke when you said throw out Canton and Tai's testimony. We're talking about Norman Wei and Bing Wong who are the, I'm sorry, you're right. I'm sorry. It's been a long day. So Wei, I'm sorry, if we throw out Wei and Wong, isn't there enough evidence that without them, because Canton's testimony, Tai's testimony and the documentary evidence is enough to support the verdict at that point? No,  not at all. They were the, they were the essential witnesses to the fact that misrepresentations were made, to the fact that payments were made out of the company that they were not aware of. Well, it's not a fraud claim. It's a breach of contract claim. So I don't know what the misrepresentations have to do with it. Because that's what they're claiming was the breach of contract. They're saying the breach was that these payments were made to these related parties. Right. Now, but that's not a misrepresentation claim. They either were or weren't made. They were made. I'm using, I'm using, I'm just relying on what Lobtail says that they, in their, in their briefs as to, as to what they claimed with the breaches of the contract that were done here. It's fair to say that you've got the burden to show prejudice. That is, would there be a significant impact upon the verdict? And fairly, um, well known that, um, rulings on evidentiary questions at, uh, the district court level seldom result in reversal based upon prejudice in particular. I would, I would, I would agree with that, Your Honor. And it works this extraordinary because this is an extraordinary exclusion of very, very, uh, significant evidence to impeach the credibility of these witnesses. This is all we were allowed to present to the jury is these are people who would like to get their money back. That was all the jury was able to hear. They didn't hear that. These people are competitors trying to drive I-Corps out of business. Uh, they're thieves. They didn't get to hear any of that. Why does it matter though? I mean, if they invested this money and they were cheated out of it, why does it matter this other stuff? They weren't cheated out of anything. That's the point. That's what, uh, Norman Way and Bing Wong said. They said they were cheated out of it. They said they didn't know what was going on. They said they didn't know about these related transactions, which were engaged in in order to keep the company alive after, uh, Logtale refused to put any more money in. Isn't it ironic that the total verdict, that's a 4 million in compensatory, 1 million in punitives, equal the total investment that was made, uh, by, uh, the plaintiffs at the beginning of the case? Isn't that an ironic, uh, similarity? No, it's due to the court's erroneous instruction telling the jury that they could give them their 5 million dollars back if they just found that there was a misrepresentation or... I wondered about that. Um, leaving aside the 50-A problem, um, we were told by your opponent that, um, that was a, a perfectly proper restitution damages award. Uh, why not? They didn't, they didn't sue for rescission and restitution damages. Not rescission, restitution. Restitution's an equitable remedy. This is not an action in equity. This is an action at law. It's an action for breach of contract and breach of fiduciary duty. They can't give, the jury can't give equitable remedies. They have to give the remedy provided by law, which is damages caused by the breach. And Logtale didn't prove any damages caused by the breach. Well, ordinarily, at least what I learned in law school, was that the usual remedy for a contract breach is to put the person in the position they would have been in had the contract been, um, been, um, uh, had they done what they're supposed to do. Right? Yeah. No, that's exactly right. That's just another way of saying that they get to recover the damages caused by the breach. I mean, there are also consequential damages, but, but just on that much, uh, if the contract hadn't been breached, presumably they would have gotten $5,000 worth of value. They put $5,000 in expecting at least not to lose their $5,000. So they would have gotten, um, if, if the contract, um, had been enforced, um, why isn't it plausible that they at least would have not lost the $5,000? You mean the $5 million, Your Honor? Yes. Yeah. Even a lot, even. A couple of zeros don't make a big difference. $5 million. Sorry. Even, even Log Tail didn't argue that. Log Tail didn't argue that as a consequence. Well, fine. That doesn't make it stupid. Well, I'm not saying it's stupid. I'm just saying even they didn't argue that. They didn't. Well, what's wrong with it? Because it's not, because they did not establish that because of a breach, let's, let's take an example. They said there were these related party transactions. They paid some money to this company that was doing some research. Right. So they took money out of the company and gave it to somebody they shouldn't have given it to. So it's no longer available to us. So that counts towards our damages because if they hadn't given it to them, it would have stayed in and our, and our investment would have been worth that much more money. So, but they can't just say that because in the meantime, this is, this is an ongoing company here. I'm sorry. This is an ongoing company. Mr. Mr. Wei sat on this board of directors from the time that they invested in this all the way through. Right. But he got financial statements every month. We go in, our stock is worth $5 million. Pardon me? Then they take a million dollars and they give it to somebody else. And now our stock's worth $4 billion. That's a damage, but they're paying. This is all part of the work, the daily work of, of I-Corps. These are all legitimate expenses. They don't allege misappropriation here. They don't allege they took money and gave it and gave it to someone improperly. Oh, I thought in their brief initially, they said just that, that in fact, 3.5 million was taken right out of the five and then given to various, well, in this case, parties, but also friends of parties. Yeah. So in that, they said that these were given to related parties, persons associated with the operators of, of I-Corps. They don't say that was wrong. They only say that that was in violation of the agreement, which says you can't do that without getting our approval. So they have the, you don't think the clear suggestion in their memory and their brief was that in fact, the money was misappropriated.      they, Whether you get at this through the language judch bers on that you were talking about which is with respect to or whether you approach this from record excerpt three twenty five which Mr were to not address which is the stipulated fact that says that the stock purchase agreement essentially was exchange of stock in exchange for all of the promises made in the contracts. So this is a unitary contract. The stock purchase agreement was breached. The stock purchase agreement has a fees and costs provision attached to it. And Dr. Canton and I core were correctly found liable for those with respect to the damages and the contract damages. The court, the court made this point. The court's instructions told the jury not to award duplicative damages. The jury came back and said, we did not award duplicative damages. We wanted to accumulate these damages across these Cree claims. And it is perfectly appropriate, Judge Berzon, as you said, for a jury to allocate damages across those claims. Those are the cases Gentile and Inducraft that we cite in our brief. So for, and further to your point, Judge Friedland, with respect to the different causes of harm, I think that's exactly right, which is why if you look at the jury instructions themselves, and this is our record excerpts, three 36, three 39, three 41. What you'll see is that each of those claims talks about the harm differently harm to log tail as a shareholder harm to log tail stemming from its contracting obligations and harm to log tail from that implied covenant, which the instructions say sits in every contract, essentially. So there are overlapping facts. Of course there are. There often are, but the causes of the harm and the nature of the harm are different. Finally, with respect to the evidence, this is abuse of discretion review. There was no abuse of discretion when the district court found irrelevant the very arguments that she had earlier rejected. I think that's the kind of argument I'm looking for to prevent ICOR and Dr. Canton from bringing into the case. There are no further questions. Thank you. Thank you both for your argument. Log tail versus ICOR. I think is submitted. Oh, he has his two minutes. Oh, okay. Go ahead. Sorry. The stipulation that counsel refers to basically said that parties were bound by all of the agreements. It doesn't say that these other contracts that did not have an attorney's fees clause, the provision of the attorney's fees clause in the stock purchase agreement is incorporated into this agreement. It's true. The entire agreement, and it's set forth in all caps, or not all caps, initial caps in the stock purchase agreement is the stock purchase agreement plus those other contracts. Those contracts were referred to as the transaction agreements, not this agreement. So, you can't apply an attorney's fees clause to a contract that doesn't have an attorney's fees clause unless they're all integrated, and they're not integrated here. They didn't integrate them. They simply referred to them, and that's a difference. Well, what does it mean to integrate? They said that this is an entire, this is the entire agreement. They said that one was the consideration for the others. Why isn't it integrated? Because an integrated contract requires an incorporation of the provisions of the other contract. And what, you mean magic words as opposed to this is, we're attaching them and this is the entire agreement? I wouldn't call them magic words, but I think the parties have a contract and they're bound by the terms of the contract. And I think the law states that in order for there to be an integrated contract, the parties have to agree that this, either this one document is all there is, or it incorporates all the provisions of these other contracts. That's what it said, pretty much exactly. It said, here's, we're attaching a bunch of agreements, and all of these together is the entire agreement. Singular. No.  Is the entire agreement. Right. And the attorney's fees clause. So there's one entire agreement. The attorney's fees clause doesn't say any person who sues to enforce the entire agreement is entitled to attorney's fees. It says they're entitled to attorney's fees if they sue to enforce the stock purchase agreement. And that's quite different. Oh, with respect to this. Yeah. The ‑‑ I respectfully submit that even if the jury is told not to award duplicate damages, the court still has to look at the entire record, which is to see if there are ‑‑ Well, that would be a perfectly good argument if they hadn't asked them. Well ‑‑ And I don't know on what basis you get to just ignore the polling. Well, the district court judge didn't have a problem with that. She looked at the record. That may be, but why would ‑‑ why can she just ignore after she asks them? She looked at the record, and there was no evidence of any separate acts or any separate damages. But there doesn't need to be. There does. Separate acts can violate three different things, right? Correct. Correct. So there doesn't need to be separate acts. There have to be separate acts unless if you're going to get ‑‑ otherwise you run the risk of getting duplicative damages. Let me explain. So, yes, that's exactly our point. The same acts breached the contract, and the same acts breached fiduciary duty, let's say. The same damages that were sought for breach of contract were sought for breach of fiduciary duty. Right. Courts say you can't award damages for both claims. You can't award damages for the tort claim, breach of fiduciary duty, if the same damages based on the same acts are awarded on breach of contract. So the judge said that's what we have here, and I'm throwing out the duplicative damages. All right. Thank you both very much. Thank you. It's a very complicated case. You did a lovely job of laying it out, so thank you very much. Thank you. Thank you. Thank you.
judges: Berzon, Friedland, Sessions